Mary PASTRICK, Appellant,

v.

GENEVA TOWNSHIP OF JENNINGS COUNTY, Dale Ritz, As Trustee of Geneva Township, Jennings County, Indiana, Appellees.

No. 1–184A35.

Court of Appeals of Indiana, First District.

Feb. 18, 1985.

Chris Sautter, Legal Services Organization of Indiana, Inc., Bloomington, for appellant.

Michael L. Rogers, Rogers & Dove, North Vernon, for appellees.

NEAL, Judge.

## STATEMENT OF THE CASE

Mary Pastrick (Pastrick) appeals the determination of the Jennings Circuit Court that she failed to meet her burden of proving that the decision of the County Commissioners affirming the Township Trustee's denial of poor relief to the plaintiff was improper.

We reverse.

## STATEMENT OF THE FACTS

The facts of this case were reduced to stipulation by the parties by the order of this court pursuant to Ind.Rules of Procedure, Appellate Rule 2–C.

Mary Pastrick is a 28 year old single mother of two children, ages eight and seven. At the time of trial, she lived with her two children in a mobile home in North Vernon.

Pastrick applied for poor relief on April 25, 1983, seeking aid in paying her electric bill to avoid the termination of electricity. Her electricity was terminated on April 26, 1983, by the Jackson County Rural Electric Membership Corporation for non-payment of a $309.61 bill. The bill represented a balance due as the result of a March 24 meter reading.

On May 4, 1983, the Geneva Township Trustee denied Pastrick's application for assistance in paying her utility bill. The stated reason contained in the denial notice was that "information provided me leads me to believe there are other sources other than Township Poor Relief Funds." The Jennings County Board of Commissioners affirmed the Trustee's denial on May 16. Pastrick appealed this decision to the Jennings Circuit Court on June 15 alleging that the actions of the Trustee and appellee, Geneva Township, in denying her poor relief were contrary to law, the evidence, and the Trustee's standards for poor relief eligibility. The complaint also named the Commissioners as defendants and alleged that they had violated her due process rights by considering reasons for denying poor relief which were not specifically stated in the notice of denial, by considering evidence and arguments not presented at the hearing, and by failing to state in their decision the reasons for their denial of poor relief.

On July 6, Pastrick filed a motion for preliminary injunction against the Township defendants. The hearing on the motion was held on August 30. The trial court issued judgment in favor of the Trustee on all issues, stating in part:

> "That the plaintiff failed to meet her burden of proof, that the decision of the County Commissioners of Jennings County affirming the Township Trustee's denial of poor relief to the plaintiff is improper."

At the time of the application for assistance, Pastrick had received money or benefits from the following sources: on April 5, 1983, she received her last unemployment check in the amount of $107.00, and she also received food stamp benefits in the amount of $103.00. Beginning May 16, 1983, Pastrick received $255.00 per month in Aid to Families with Dependent Children (AFDC) benefits. Her food stamp benefits were increased to $189.00 per month.

Pastrick's resources were also limited at the time her application was being considered. She had no savings account, owned no automobile, and earned no income. Her ex-husband had paid no child support in two years and any support she might have received beginning May, 1983, had been assigned to the county as reimbursement of AFDC benefits paid to her.

At trial, the Trustee testified that he considered Pastrick ineligible for poor relief essentially for three reasons. First, he stated that he counted the value of Pastrick's monthly food stamps as income. It was his opinion that this rendered her financially ineligible. Secondly, the Trustee stated that he believed that she had family or personal resources by which the electric bill could have been paid. Finally, the Trustee indicated that he felt Pastrick failed to work out a partial payment plan with R.E.M.C. to avoid termination of her

electric service. Pastrick explained at trial that she was not, however, able to work out such a plan because she had been financially unable to meet the terms of a prior agreement in 1982.

The Trustee stated that the evidence he relied upon in concluding that Pastrick had other resources available to her to pay her electric bill was provided by her landlord, Bill Nichols. Mr. Nichols testified that he had been renting a mobile home to Pastrick. He stated that when collecting the April, 1983, rent from Pastrick he observed Bud McIntosh, a former boyfriend, give her money. Pastrick received $25.00 from him on that occasion, which she used to help pay her April rent of $130.00. According to Pastrick, the money was repayment of a loan she had previously made to Mr. McIntosh.

The record is conflicting on the question of how much money Pastrick received from her parents. Pastrick stated that her mother gave her $32.00 toward the payment of May's rent; appellees recollect that she testified that her mother gave her $130.00, the entire month's rent. She testified that her parents are retired, living on social security, and unable to help her with her bill.

Further, there was some testimony at the trial that Pastrick had some interest in or potential interest by way of an option to purchase the mobile home she rented from Bill Nichols. However, there was no evidence that she had any meaningful equity or that it was reasonable or possible for her to borrow funds to pay the utility bill. In addition, Pastrick had a workman's compensation claim pending.

According to the relief assistance eligibility standards for Geneva Township, the maximum total monthly income which may be received by a family of three in order to still qualify for poor relief is $310.00 per month. It was the Trustee's opinion that Pastrick's income exceeded this amount.

## ISSUES

Pastrick raises the following issues, some of which we have restated:

I. Whether Pastrick met the statutory conditions of poor relief eligibility and the financial eligibility criteria established by the Geneva Township Trustee;

II. Whether the federal food stamp program prohibits Indiana township trustees from considering food stamps, as income in determining an applicant's eligibility for poor relief;

III. Whether, as a matter of law, a poor relief appeal from a Board of County Commissioners' decision is heard as an original cause;

IV. Whether Ind.Rules of Procedure, Trial Rule 52(A)(1) requires a trial court to enter specific findings of fact and conclusions of law in a judgment denying a motion for preliminary injunction.

## DISCUSSION AND DECISION

Issues I, II, and III: *Eligibility.*

■ It is necessary to examine the appeal process from a Township Trustee's denial of poor relief. IND.CODE 12-2-1-18 provides for appeals by applicants to county commissioners. In hearing an appeal, the board and its hearing officers are guided by uniform relief standards of eligibility and need establsihed by the township trustee. The board of commissioners' decision is then appealable to the county circuit court pursuant to IND.CODE 36-2-2-27. IND.CODE 36-2-2-29(a) states that an appeal under Section 27 shall be tried as an original cause. "As an original cause, the factual findings of the board are not given the weight or accorded the presumption of validity which is usually given administrative fact findings." *State ex rel Van Buskirk v. Wayne Township,* (1981) Ind.App., 418 N.E.2d 234. It has been uniformly held that the circuit court does not sit as a court of errors, but must try the case for itself and render a final judgment. *Bonfoy v. Goar,* (1894) 140 Ind. 292, 39 N.E. 56.

■ The trial court ruled in its judgment that Pastrick "failed to meet her burden of proof, that the decision of the County Commissioners ... affirming the Township Trustee's denial of poor relief is improper". Appellant argues that to the extent the trial court placed a burden upon Pastrick to prove that the County Commissioners' ruling was in error rather than to require her to simply prove she is eligible for poor relief, the trial court's judgment is contrary to law. We agree. IND.CODE 36-2-2-29 mandates that this cause be treated as an original action; in requiring Pastrick to prove that the Commissioners' decision is erroneous, the trial court has accorded weight to the Board's findings and conclusions, which it should not do.

■ We turn to our review of the record. When reviewing a negative judgment, we may reverse the trial court's decision only if it is contrary to law. *Hebel v. Conrail, Inc.*, (1983) Ind.App., 444 N.E.2d 870. In determining whether a negative judgment is contrary to law, this court will neither weigh the evidence nor judge the credibility of the witnesses. We will consider only the evidence most favorable to the prevailing party, together with all reasonable inferences therefrom. *Young v. VanZandt*, (1983) Ind.App., 449 N.E.2d 300.

At the onset, we note it is absolutely uncontested (even by appellee) that the value of food stamps may not be considered when determining an applicant for poor relief's income. 7 U.S.C., Sec. 2017(b) (Supp.1984) states:

"The value of the allotment provided any eligible household shall not be considered income or resources for any purpose under any Federal, state, or local laws, including, but not limited to, laws relating to taxation, welfare, and public assistance programs, and no participating state or political subdivision thereof shall decrease any assistance otherwise provided an individual or individuals because of the receipt of an allotment under this chapter."

■ A recent federal decision from the Northern District of Indiana addressed the policy behind the above-quoted legislative provision. In *Foster v. Center Township of LaPorte County*, (N.D.Ind.1981) 527 F.Supp. 377, *aff'd.*, 673 F.2d 1334 (7th Cir. 1981), the defendant township made two modifications in its poor relief eligibility standards: first, it ceased considering the value of food stamps received in determining an applicant's income, apparently in deference to 7 U.S.C. § 2017(b); and second, it lowered the guaranteed minimum income levels across the board. Appellants alleged that the minimum levels were lowered to take food stamps into consideration; the county pleaded fiscal constraints. The District Court, in determining that there was a sufficient question of fact to deny a summary judgment motion stated:

"[7 U.S.C. 2017(b) ] does seem to expressly prohibit the lowering of the guaranteed income level because of defendants' recognition that the applicants are receiving food stamps. It seems clear that the congressional policy reflected in the adoption of 7 U.S.C. 2017(b) was to guarantee that food stamps would be available not in substitution for, but in addition to, any welfare payments already provided by states."

*Foster, supra,* at 379.

Clearly, then, the Trustee erred in taking into account Pastrick's April food stamp benefits when he denied her April 25th application for assistance in paying her utility bill.

■ The Trustee testified that he denied Pastrick's application for two other reasons besides the receipt of food stamps—he believed that appellant had family or personal resources and that she failed to work out a payment plan with the R.E.M.C. This latter contention may be dealt with summarily inasmuch as the only evidence on this subject came from Pastrick's testimony, wherein she stated that she was ineligible for a hardship agreement because she defaulted on a previous agreement entered into on March 30, 1982.

■ As for aid from her parents and other sources, our review of the stipulated facts indicates that Pastrick testified that her parents were retired, living on social security, and unable to assist her with the utility bill. The facts reveal further that there is a controversy over whether Pastrick testified that her mother gave her $32.00 or $130.00 in May for May's rent. Bearing in mind that we must consider the evidence most favorable to the appellees, then, we accept the $130.00 sum as income for the month of May. We note, however, that IND.CODE 12–2–1–7 states that it is the duty of the overseer of the poor to inquire into the family relationships of poor people for whose benefit claims of relief are paid and ascertain whether such people have relatives able and willing to assist them. As appellant points out, there is no indication whatsoever that the Trustee made such an inquiry.

Apparently one of the "other sources" for assistance to Pastrick relied upon by the Trustee was Bud McIntosh, her former boyfriend. The Trustee received information from Pastrick's landlord that he saw McIntosh give her $25.00 in April. Pastrick contends that the amount was merely the repayment of a loan. Again, because of our standard of review, we add $25.00 to Pastrick's April income.

■ Finally there is some indication that the Trustee felt Pastrick had equity in a land installment contract for the mobile home and property in which she lived. Pastrick's recollection is that the testimony established that she had an unexercised option to purchase. Part VIII of the poor relief eligibility standards states: "resources available to you, beyond those necessary for basic living needs and to earn a livelihood, will be considered as assets and may affect your eligibility. Except where it is reasonable to borrow money on the equity, resources that are exempt from this test will include a home where the household resides and an automobile". It is our opinion that Pastrick's mobile home fits this exemption.

■ Totalling our evaluation of Pastrick's income from the stipulated facts, we reach the following assessment:

April 1983

| April 5 | – $107.00 – Unemployment Compensation |
| April | – 25.00 – McIntosh |
| TOTAL INCOME | $132.00 |

May 1983

| May | – $130.00 – Rent money from mother |
| May 16 | – 225.00 – AFDC payment |
| TOTAL INCOME | $355.00 |

Pastrick applied for utility assistance on April 25, 1983; her income for the month of April was $132.00, well below the maximum allowable income of $310.00 per month for a family of three. She was therefore eligible for poor relief assistance. Her May income, based upon facts most favorable to the appellees, exceeded the maximum allowable income amount.

The trial court erred in denying Pastrick the relief requested; namely, the aid in paying her electric bill of $309.61.

Finally, appellees contend that Pastrick's claim for a preliminary injunction and damages was not the proper remedy; instead, she should have filed a petition for mandate pursuant to IND.CODE 12–2–1–34.

■ Public officials, boards, and commissions may be mandated to perform ministerial acts when under a clear legal duty to perform such acts. *Perry Township v. Hedrick*, (1981) Ind.App., 429 N.E.2d 313. A mandamus action does not lie to establish a right or to define and impose a duty. *Perry Township, supra.* The issue in *Perry Township* was whether the Trustee, upon the issuance of the Commissioners' reversal of his decision, was under a legal duty to comply therewith. *Id.* Clearly that situation is distinguished from the instant one, wherein a dissatisfied public assistance applicant is appealing an unfavorable decision of the Board of Commissioners. There is no language in IND. CODE 12–2–1–34 which renders it an exclusive remedy. The trial court had the juris-

diction, pursuant to IND.CODE 36–2–2–29, to hear Pastrick's complaint.

IV: *Findings of Fact.*

Inasmuch as we reverse the trial court's decision on the above grounds, we need not discuss this issue.

The judgment is reversed and the trial court is ordered to instruct the Trustee to pay the $309.61 claim.[1]

Judgment reversed.

RATLIFF, P.J., and ROBERTSON, J., concur.

---

1. There is some question as to whether Pastrick is entitled to receive the entire $309.61 amount or whether the Trustee is entitled to use his discretion and provide an amount of utility assistance less than the total utility bill. This question was not, however, addressed by the parties, and consequently our award of the total amount should not be construed as taking a position on this matter.